# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**
February 4, 2016
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**TIM A. MONEYPENNY,**
**Claimant Below, Petitioner**

**vs.)    No. 14-0879** (BOR Appeal No. 2049188)
          (Claim No. 2012023440)

**SUMMIT ENVIRONMENTAL SERVICES, LLC,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Tim A. Moneypenny, by William B. Richardson Jr., his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review.

This appeal arises from the Board of Review's Final Order dated August 6, 2014, in which the Board affirmed a January 14, 2014, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges reversed the claims administrator's March 4, 2013, decision to deny the request for temporary total disability benefits from January 14, 2013, through February 28, 2013. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Moneypenny, a laborer and truck driver for Summit Environmental Services, LLC, was at work on January 12, 2012, when one of his coworkers became anxious and panicked inside a large machine. Mr. Moneypenny helped the coworker out of the door and felt a pulling sensation in his abdomen. On January 19, 2012, Mr. Moneypenny was still experiencing pain so he saw Tom Herrmann, M.D., for an evaluation. Dr. Herrmann diagnosed an umbilical hernia and recommended surgery. He opined that Mr. Moneypenny would need to be off work around four weeks. Thereafter, on January 31, 2012, the claims administrator held the claim compensable for an umbilical hernia.

1

On February 22, 2012, Dr. Herrmann issued his report. Dr. Hermann stated that a CAT scan and surgical evaluation showed a right inguinal hernia in addition to the compensable umbilical hernia. Mr. Moneypenny had that hernia fixed with a surgical operation. On April 3, 2012, Dr. Herrmann authored a second report following the surgical repair of both hernias. Dr. Hermann placed Mr. Moneypenny on sedentary work restrictions. Sushil Sethi, M.D., then evaluated Mr. Moneypenny and issued a report of assessment on May 8, 2012. Dr. Sethi's physical examination revealed no inflammatory changes or neuromuscular deficits. Dr. Sethi opined that Mr. Moneypenny had reached his maximum degree of medical improvement and could return to his normal employment without restrictions. Mr. Moneypenny was found to have 2% whole person impairment related to the compensable injury.

On May 1, 2012, Mr. Moneypenny's vocational counselor, Howard Feick, stated that he could no longer cover the light duty restrictions. A job was found at SW Resources that would accommodate light duty and Mr. Moneypenny was instructed to report there. Mr. Moneypenny was granted a 2% permanent partial disability award on May 8, 2012, by the claims administrator based upon the report of Dr. Sethi. Sometime in June of 2012, Mr. Moneypenny was seen by Dr. Herrmann for an evaluation. Mr. Moneypenny complained of pain from his right inguinal area to his right testicle. Dr. Herrmann recommended referral to a pain clinic for shots for ilioinguinal nerve entrapment. Dr. Herrmann indicated that he had not reached his maximum dgree of medical improvement.

A report from to Anil Patel, M.D., at the Pain Management Center was made available on June 12, 2012. Dr. Patel's impression was umbilical hernia. Dr. Patel administered a right ilioinguinal/genitofemoral nerve block. Dr. Patel recommended three more injections over a three month period. On July 2, 2012, a report from Dr. Herrmann stated that Mr. Moneypenny was complaining of another knot above the umbilicus. He indicated that he first noticed the knot approximately two weeks ago while was leaning over a table at work. Physical examination revealed a tender prominence just above the umbilicus. The assessment was right inguinal hernia with complicating ilioinguinal entrapment and umbilical hernia with complicating periumbilical hernia. Mr. Moneypenny was referred to Adam Kaplan, M.D., for evaluation.

In early July of 2012, Mr. Moneypenny went to visit his nephew at the employer's work site. Mr. Moneypenny was called into the office by a representative of Summit Environmental Services, LLC, to discuss the fact that he was on the job site without authorization. At that time, the representative accused Mr. Moneypenny of being drunk. Mr. Moneypenny insisted that he only had one beer before going to visit his nephew at the work site. The representative also questioned the way Mr. Moneypenny was dressed on the day he visited the job site. He further accused Mr. Moneypenny of masquerading as a supervisor and terminated his employment.

On August 29, 2012, a report stated that Dr. Herrmann opined that Mr. Moneypenny was not at his maximum degree of medical improvement. For the time between September and November of 2012, Mr. Moneypenny followed-up with Dr. Herrmann. The assessment was recurrent periumbilical hernia, status post repair, and right inguinal hernia repair with right ilioinguinal nerve entrapment syndrome. It was noted that Mr. Moneypenny had been scheduled

for surgical repair for a recurrent periumbilical hernia. Dr. Herrmann indicated that Mr. Moneypenny was essentially at his maximum degree of medical improvement unless Dr. Kaplan recommended further intervention for his ilioinguinal entrapment syndrome. On November 26, 2012, the claims administrator authorized an epigastric hernia repair. On January 14, 2013, a report from Dr. Herrmann documenting the post-surgical follow-up was made available. It reported continued right ilioinguinal nerve pain.

On March 4, 2013, the claims administrator denied a request from Dr. Herrmann for the payment of temporary total disability benefits from January 14, 2013, through February 28, 2013. The decision noted that Mr. Moneypenny had been terminated from his employment on July 3, 2012, for a violation of company policy. The decision stated that while Mr. Moneypenny may be entitled to medical benefits, he was no longer entitled to wage replacement benefits due to his termination. In his March 11, 2013, report Dr. Herrmann opined that Mr. Moneypenny had reached his maximum degree of medical improvement in regard to the recurrent periumbilical hernia. Mr. Moneypenny also had ilioinguinal nerve entrapment with associated pain. In regard to that condition, Dr. Herrmann stated that a finding of maximum degree of medcial improvement was dependent upon workers' compensation's authorization of additional pain shots.

On April 5, 2013, the claims administrator approved Dr. Herrmann's request for a referral to Dr. Patel for three pain injections. On April 30, 2013, the claims administrator approved a request for referral to Pars Brain & Spine Institute and three series of injections. On September 12, 2013, the claims administrator denied requests for right inguinal block, follow-up visits, and the addition of mononeuritis of the lower limb as well as sacroiliitis, thoracic, and lumbosacral neuritis as compensable conditions in the claim. An April 8, 2013, report from Dr. Herrmann stated that the surgical repair was stable and there were no recurrent symptoms. Dr. Herrmann also noted he had right ilioinguinal nerve entrapment syndrome for which he was scheduled to receive pain shots. Dr. Herrmann indicated that he would see Mr. Moneypenny back in six weeks at which time he would be at his maximum degree of medical improvement. Another report on May 20, 2013, from Dr. Herrmann indicated that he still had symptoms of ilioinguinal nerve entrapment and was scheduled to receive injections.

On August 19, 2013, Dr. Herrmann submitted another report. Mr. Moneypenny initially received considerable relief following two shots, but the pain eventually returned. The pain clinic sought authorization for a nerve block. Dr. Herrmann noted that a finding of maximum degree of medical improvement could not be made until after the nerve block was performed.

On October 29, 2013, Mr. Moneypenny signed an affidavit stating that on January 12, 2012, he was required to pull a co-worker out of an opening in a coal separator machine. While assisting the co-worker, Mr. Moneypenny felt a pulling sensation in his right groin. Within a day or two, Mr. Moneypenny developed swelling around his belly button. On February 24, 2012, Mr. Moneypenny underwent surgery to repair an umbilical and inguinal hernia. Approximately six weeks later, Mr. Moneypenny was released for light duty work. Mr. Moneypenny performed office work for his pre-injury employer for four or five weeks and then took a job with SW Resources cutting material for rugs. Mr. Moneypenny worked at SW Resources for several

months before returning to the pre-injury employer to perform office work. About two weeks after returning to the preinjury employer, Mr. Moneypenny received a pain injection and was taken off work. While off work, Mr. Moneypenny went to the employer's job site to speak to his nephew. The next day, Mr. Moneypenny was called to the employer's office and terminated for visiting his nephew. Thereafter, Mr. Moneypenny continued receiving medical treatment for his hernias. In November of 2012 the claims administrator approved corrective surgery in the claim, and in December of 2012, he underwent a second surgical hernia repair. Mr. Moneypenny continued to follow-up with Dr. Herrmann but had not yet been found to be at maximum degree of medical improvement.

The Office of Judges found Mr. Moneypenny was entitled to temporary total disability benefits from January 14, 2013, through February 28, 2013. The Office of Judges noted that the evidence showed that Mr. Moneypenny suffered an umbilical and inguinal hernia as a result of a compensable injury on January 12, 2012. The Office of Judges also noted that the umbilical and inguinal hernia was held compensable. The Office of Judges noted that Mr. Moneypenny underwent corrective surgery to repair the hernia and was released to light duty work approximately six weeks after his surgery. The Office of Judges further found the evidence indicated that Mr. Moneypenny suffered a recurrence of the umbilical hernia after returning to modified work. The surgery was ultimately approved by Order dated November 26, 2012. The corrective surgery was performed on December 27, 2012. Thereafter, Mr. Moneypenny was seen by Dr. Herrmann for post-surgical follow-up on January 14, 2013, at which time Dr. Herrmann certified Mr. Moneypenny as temporarily and totally disabled from January 14, 2013, through February 28, 2013. The Office of Judges determined the weight of the evidence established that Dr. Herrmann's request to reopen this claim for temporary total disability benefits from January 14, 2013, through February 28, 2013, was to allow for post-surgical recovery following the surgical procedure. The Office of Judges found that Mr. Moneypenny's termination from employment had no impact on his eligibility for temporary total disability benefits. The Board of Review adopted the findings of the Office of Judges and affirmed its Order. The Board of Review also found that Mr. Moneypenny was fired in July of 2012.

We agree with the Office of Judges and Board of Review. It was apparent that Mr. Moneypenny suffered a compensable injury and required surgery because of it. It was also apparent that his condition progressed and he required another surgery to repair the progression. While the decision of the Office of Judges and Board of Review was favorable to Mr. Moneypenny, he appealed it because he believed his temporary total disability benefits should have started directly after his surgery, which occurred on December 27, 2012, and not on January 14, 2013, when his doctor certified that he was temporarily totally disabled. Mr. Moneypenny argued that his benefits were unjustly cut off by the Board of Review because it held that he could not reopen his claim after he had been terminated. The Board of Review made no such finding. The Board of Review stated that was that he was fired in July of 2012 and the Office of Judges was correct in its decision based upon the evidence submitted.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous

4

conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: February 4, 2016**

**CONCURRED IN BY:**
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTING:**
Chief Justice Menis E. Ketchum